Ronald JORDI, James W. Jackson, Ron Kostroski, Claire Richardson, John Budd, Milo Kilen, Dan Reierson, Duane Woerpel, Bill Rahl, Michael Kuss, John R. Frericks, Shaughn Bannon, Mary Lee Lyon, Tammy Kochaver, Lois Emberson, Cynthia Larson, John Morey, and Laura Lang, Plaintiffs,

v.

The SAUK PRAIRIE SCHOOL BOARD; Robert Koenig, Donna Purcell, Melvin Bickford, Kathryn Rozovics, Corine Hutter, William Jacquish, and Torger Mikkelson, individually and as officers of the Sauk Prairie School Board; the Sauk Prairie Education Association; Oakla Yankee, individually and as an officer of the Sauk Prairie Education Association; the Wisconsin Education Association Council; James Blank, and Morris D. Andrews, individually and as officers of the Wisconsin Education Association Council, Defendants.

No. 85–C–1165–C.

United States District Court, W.D. Wisconsin.

Jan. 30, 1987.

**1568**

Walter L. Harvey, Harvey Law Offices, Madison, Wis., for plaintiffs.

Bruce Meredith and William Sample, Wisconsin Educ. Ass'n Council, Madison, Wis., for defendants.

### ORDER

CRABB, Chief Judge.

This is a civil action for monetary, injunctive, and declaratory relief. Plaintiffs allege that defendants have deprived them of federal and state constitutional rights of freedom of expression and association, due process, and equal protection. Plaintiffs also allege that defendants have violated Wis.Stat. § 111.70(1)(f), (2), and (3)(a)6 (the provisions of the Wisconsin Municipal Employment Relations Act governing fair share agreements between muncipal employers and labor organizations.) Jurisdiction is alleged to exist under 42 U.S.C. § 1983 and on 28 U.S.C. § 1343 and § 2201; in addition, plaintiffs invoke this court's pendent jurisdiction over their state constitutional and statutory claims. Presently before the court are defendants' motions to dismiss and for abstention, and plaintiffs' motion for a preliminary injunction.

Defendants argue that many of plaintiffs' claims are time barred because they were filed after the end of the limitations periods under 42 U.S.C. § 1983 and Wis.

Stat. § 111.70. They argue also that this court should abstain from adjudicating plaintiffs' federal constitutional claims because these claims and others are currently at issue in a proceeding before the Wisconsin Employment Relations Commission between the same parties, and that this court should decline to exercise pendent jurisdiction over plaintiffs' state claims. Finally, defendants contend that plaintiffs' claims based on the Wisconsin Constitution and Wis.Stat. § 111.70 fail to state a claim on which relief can be granted, and that all of the claims asserted against individual defendants fail to state a claim on which relief can be granted. In support of their motion for abstention, defendants have also filed certain supplemental materials.[1]

Plaintiffs do not object to any of these supplemental materials, and have filed supplemental materials of their own, consisting of a transcript of proceedings before the Wisconsin Employment Relations Commission on September 17, 1986. I will consider the transcript in ruling on the motion to abstain.

Whether to abstain is a threshold question that must be resolved before the motion to dismiss for failure to state a claim can be addressed. For the purpose of deciding the motion for abstention, I have assumed that the allegations of the complaint are true and have used these allegations to make findings of fact concerning the identity of the parties and the nature of the dispute between them. I have also made findings of fact concerning the administrative proceedings between the parties based on the supplemental materials that have been submitted.

### Findings of Fact

The following findings of fact are based on the allegations of the complaint and are made by assuming those allegations to be true.

---

1. The Court of Appeals for the Seventh Circuit has held that it is appropriate for a court to look to facts occurring in a state court proceeding subsequent to a motion to abstain in federal court in ruling on the motion to abstain. *Illi-* *nois Bell Telephone Co. v. Ill. Commerce Com'n,* 740 F.2d 566, 570 (7th Cir.1984). Thus, defendants' supplemental materials related to abstention are properly before the court.

Plaintiffs are all Wisconsin residents employed as teachers by defendant Sauk Prairie School Board. Defendants Koenig, Purcell, Bickford, Rozovics, Hutter, Jacquish, and Mikkelson are officers and members of the Sauk Prairie School Board.

Sauk Prairie Education Association, South Central United Educators, Wisconsin Education Association Council, and the National Education Association are affiliated labor organizations. Defendant Sauk Prairie Education Association is the exclusive bargaining representative for teachers employed by the Sauk Prairie School Board. Defendant Wisconsin Education Association Council is a statewide labor organization representing teachers; defendants Blank and Andrews are its president and secretary. Defendant Sauk Prairie Education Association submits a specific sum of money for each of its members each month to defendant Wisconsin Education Association Council. It is a condition of membership in Sauk Prairie Education Association that the prospective member also belong to the other three organizations. Only members of the Sauk Prairie Education Association can hold its offices. None of the plaintiffs belong to any of the four organizations.

Each year since 1979, defendants Sauk Prairie Education Association and Sauk Prairie School Board have entered into a collective bargaining agreement covering the wages, hours, and conditions of employment of Sauk Prairie teachers. The Sauk Prairie Education Association has held membership meetings to vote on ratification of these agreements that were open only to its members.

Each of the Sauk Prairie collective bargaining agreements has contained a "fair share" provision, by virtue of which employees of the bargaining unit who were not members of the Sauk Prairie Education Association could be required to pay "their fair share costs of the collective bargaining process and contract administration." Under the terms of the agreement, the Sauk Prairie Education Association would certify such costs, and the school board would then deduct each non-member's fair share in equal installments from that person's paychecks. The school board did not participate in the process by which fair share costs were determined. The amount deducted from non-members' paychecks has been equal or nearly equal to the dues required of Sauk Prairie Education Association members.

Plaintiffs object to defendant Sauk Prairie Education Association's use of any of their money for any purpose, and in particular for any purpose not directly related either to the costs of collective bargaining incurred by the Sauk Prairie Education Association acting as the plaintiffs' exclusive representative, or to the costs of administering the collective bargaining agreement between the Sauk Prairie School Board and the Sauk Prairie Education Association.

Defendant Sauk Prairie Education Association transmits a portion of the money withheld from plaintiffs' salaries to the Wisconsin Education Association Council and its affiliated labor organizations, pursuant to an arrangement by the Commission and the National Education Association that is imposed on each of their local affiliates. The organizations to which this money is transmitted are not parties to the collective bargaining agreement between the Sauk Prairie School Board and the Sauk Prairie Education Association, and no portion of the money transmitted to them is spent on the cost of collective bargaining between the Sauk Prairie Education Association and the Sauk Prairie School Board, or on the cost of administering the collective bargaining agreement between these defendants. Instead, these organizations use this money to engage in advocating, promoting, and furthering their ideological, political, social and associational goals.

The following findings of fact are based on the supplemental materials submitted by the parties.

On September 10, 1979, plaintiff Ronald Jordi informed the president of the Sauk Prairie Education Association that he did not wish to belong either to the Sauk Prairie Education Association or to the organizations with which it is affiliated, the South Central United Educators, Wisconsin

Education Association Council, and the National Education Association. On October 2, 1979, Jordi was furnished with a copy of the non-member fair share procedure of the Wisconsin Education Association Council by-laws. Under this procedure, members of a local affiliate of the Wisconsin Education Association Council can object to the expenditure of a portion of their fair share payment for contributions or expenditures on behalf of political candidates, parties, or organizations, and can apply for a rebate of the portion of the payment spent for such purposes. Such objections are filed with the president of the Wisconsin Education Association Council.

Jordi initiated the fair share procedure on October 4, 1979. Jordi and the Wisconsin Education Association Council were not able to agree on the amount of his rebate, and Jordi ultimately invoked the arbitration provision of the non-member fair share procedure.

In June 1981 Jordi and the Wisconsin Education Association Council chose Edward Krinsky of the American Arbitration Association as arbitrator in their dispute over the amount of the rebate to which Jordi was entitled for the 1979–80 and 1980–81 school years. Krinsky conducted a hearing on the dispute on July 23 and August 20, 1981.

On February 24, 1982, plaintiffs Jordi, Jackson, Kostroski, Richardson, Budd, Kilen, Reierson, Woerpel, Rahl, Kuss, Bannon, and Emberson, with Joanne Zimmel, who is not a plaintiff in this lawsuit, filed a complaint against the Sauk Prairie School Board, the Sauk Prairie Education Association, the South Central United Educators, and the Wisconsin Education Association Council with the Wisconsin Employment Relations Commission, case number XXII, no. 29357, MP–1312. The complaint charged the respondents with discriminating against the complainants in the exercise of their rights under Wis.Stat. § 111.-70(2). The complainants contended that the Sauk Prairie Education Association was wrongfully charging them as their fair share of the costs of collective bargaining the same amount it charged its members as dues, but was denying them the right to vote at Sauk Prairie Education Association meetings.

Plaintiff Jordi and the Wisconsin Education Association Council submitted their briefs in the pending arbitration proceeding to arbitrator Krinsky on March 22, 1982 and May 22, 1982.

On May 24, 1982, the complainants in the Wisconsin Employment Relations Commission proceeding submitted an amendment to the commission to include three additional complainants, including plaintiffs Cindy Larson and Mary Lee Lyon.

On June 9, 1982, the plaintiffs' Wisconsin Employment Relations Commission complaint came on for a hearing before Wisconsin Employment Relations Commission examiner Lionel Crowley. Evidence was presented on two issues: whether the respondents had interfered with the rights of non-member employees by refusing to let them participate in union proceedings, and whether the respondents had made fair share deductions in excess of the proportionate share of cost of collective bargaining and contract administration.

On September 20, 1982, arbitrator Krinsky issued an award on the issue of the rebate owed to plaintiff Jordi for the 1979–80 and 1980–81 school years, ordering the Wisconsin Education Association Council to pay Jordi $27.49 for 1979–80, and $33.87 for 1980–81. In making the award, the arbitrator applied the Wisconsin Employment Relations Commission's decision in *Gerleman v. Milwaukee Board of School Directors.*

On October 15, 1982, the complainants in the Wisconsin Employment Relations Commission proceeding filed a communication with the Commission asking that four other complainants be added, including plaintiff John Freriks.

On March 31, 1983, examiner Crowley of the Wisconsin Employment Relations Commission issued initial findings of fact, initial conclusions of law and an order in case XXII, No. 29357, MP–1312. Crowley concluded that respondent Sauk Prairie Education Association's denial of membership

to Jordi based on his refusal to become a member of Sauk Prairie Education Association's affiliates, and its refusal to permit non-members to vote in its elections, hold office, or attend its meetings and bargaining sessions did not constitute a violation of Wis.Stat. § 111.70(2) and (3)(b)1. Crowley concluded also that respondent Wisconsin Education Association Council had not coerced or intimidated the Sauk Prairie School Board to interfere with the rights of employees. On the basis of his initial findings of fact and conclusions of law, the examiner dismissed the allegations of the complaint with respect to the denial of membership, the denial of non-member participation in Sauk Prairie Education Association affairs, and Wisconsin Education Association Council intimidation of the Sauk Prairie School Board.

On June 24, 1983, examiner Crowley issued an order denying the respondents' motion to limit introduction of evidence and indefinitely postponed the hearing. Respondents had sought to limit the introduction of evidence on the issue of fair share deductions solely to the validity of arbitrator Krinsky's award, rather than allowing a trial *de novo* on the issue of fair share amounts. The examiner noted that the question of fair share amounts in the public sector involved constitutional and statutory issues not applicable in the private sector, and that the Wisconsin Employment Relations Commission had not established a deferral policy as of the date of his order. The examiner also noted that two cases involving the issue of fair share deductions were then pending before the Wisconsin Employment Relations Commission (*Browne v. Milwaukee Board of School Directors* and *Gerleman v. Milwaukee Board of School Directors*), and that the commission had indicated that it intended to treat these cases as the leading cases on the fair share issue. The examiner concluded that since the commission had not issued a final decision in *Browne* and *Gerleman*, it was not possible for him to determine whether the analysis used by arbitrator Krinsky was in accord with or clearly repugnant to the commission's policies. For this reason, the examiner could

not determine whether it was appropriate to defer to the arbitrator's award, so the motion to limit the evidence to the validity of the arbitrator's award was denied. In addition, because the commission had not issued a final decision in *Browne* and *Gerleman*, the examiner concluded that there would be no purpose in his addressing the fair share issue, since it would be necessary for him to determine issues that the commission might later decide differently in *Browne* and *Gerleman*. Therefore, the examiner ordered an indefinite postponement of a hearing on the matter on his own initiative. The examiner indicated that during the postponement he would entertain a motion for discovery by the complainants.

On May 9, 1986, the Wisconsin Employment Relations Commission issued an order to show cause and notice of hearing in *Browne v. Milwaukee Board of School Directors*, directing the respondent unions to show cause, in light of the United States Supreme Court's decision in *Chicago Teachers Union v. Hudson*, — U.S. —, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), why the commission should not issue an order requiring the respondents to cease and desist from enforcing the fair share agreement and to make the complainants whole with interest for all fair share deductions taken from them. The commission determined that under *Hudson*, a union must be denied access to the fair share fees paid by nonmembers except as to those amounts that it can adequately demonstrate are not reasonably in dispute, and further that even putting the entire fair share amount in escrow does not adequately protect the First Amendment rights of nonmembers covered by the fair share agreement if other required procedural safeguards are not present. In light of the respondent unions' admissions in their pleading concerning their rebate procedures, the commission concluded that it was appropriate to order the respondents to show cause why a cease and desist order should not be issued immediately.

On May 16, 1986, the complainants in four other fair share cases before the Wis-

consin Employment Relations Commission submitted proposed findings of fact and conclusions of law in light of the *Hudson* decision. *Poeppel v. Board of Education,* Case 11, No. 30570 MP–1397; *Hewitt v. Board of Education for Joint School District No. 3,* Case 1, No. 26912 MP–1161; *Chentnik v. Richfield Education Association,* Case 1, No. 27171 MP–1176; and *Ekblad v. Northwest United Educators,* Case 3, No. 29016 MP–1289. Apparently, these cases had already been consolidated by the Wisconsin Employment Relations Commission. The complainants in *Poeppel* and the other consolidated cases proposed as a conclusion of law that the respondents were not in compliance with the constitutional requirements for nonmember fair share contributions set out in *Hudson.*

In May 1986 the respondents in the Wisconsin Employment Relations Commission proceeding brought by some of the plaintiffs in this case (*Sauk Prairie Fair Share Members v. The Sauk Prairie School Board,* Case XXII, No. 29357 MP–1312) requested that the case be consolidated for purposes of adjudication with *Poeppel* and the other fair share cases pending before the Wisconsin Employment Relations Commission. Respondents in *Poeppel* and the other cases indicated that they had no objection.

On June 20, 1986, the Wisconsin Employment Relations Commission issued an order granting the motion for consolidation, an order to show cause and a notice of hearing. The Sauk Prairie complainants had indicated that they opposed consolidation of their case with the other fair share cases pending before the Wisconsin Employment Relations Commission because they had filed this lawsuit, and believed that their case should remain before this court for decision. The commission found that the issues in the Sauk Prairie case were nearly identical to those raised in the other fair share cases, and that failure to consolidate all the pending fair share cases before it would result in an unnecessary duplication of effort and expense for all concerned. The commission concluded that the Sauk Prairie complainants' preference to proceed in this court and to have their Wisconsin

Employment Relations Commission complaint held in abeyance was not a sufficient reason for ignoring the similarities among all the fair share cases and the inefficiency that would result if consolidation was not ordered. Accordingly, the commission consolidated the Sauk Prairie case with the four other fair share cases that had already been consolidated and were pending before it, stating that if the Sauk Prairie complainants preferred to proceed only in this court, they should formally so advise the commission by means of a motion to withdraw their complaint. The order to show cause required the respondents to show cause, in light of the *Hudson* decision and the record, why the commission should not issue an order requiring them to cease and desist from enforcing any fair share agreement affecting the bargaining unit involved in the matter, and requiring them to make the complainants whole with interest for all fair share deductions taken from them since one year prior to the filing of the complaint.

On September 17, 1986, a hearing was held before the Wisconsin Employment Relations Commission on the Sauk Prairie case and the other cases with which it had been consolidated. At this hearing, the commission ordered that 100% of all fees collected by the respondents from the complainants be put into escrow accounts retroactively effective as of March 4, 1986.

The complainants' brief in the five consolidated cases before the Wisconsin Employment Relations Commission was served on October 28, 1986. The respondents' reply brief was signed by the defendants' attorney on December 3, 1986, and presumably was submitted to the commission at about the same date. The complainants' reply brief was served on December 22, 1986.

Currently, the Wisconsin Education Association Council is involved in an arbitration before Robert Mueller, an arbitrator appointed by the Wisconsin Employment Relations Commission, on the issue of the appropriate rebate for fair share employees working in districts in which an affiliate of

the Wisconsin Education Association Council is the exclusive bargaining representative for both the 1985–86 and the 1986–87 school years, including Sauk Prairie. Approximately eight days of hearings were held in this proceeding over a three month period, ending December 20, 1986. Counsel for the Wisconsin Education Association Council expects the arbitrator's decision in this case relatively soon. Plaintiff Jordi was given an opportunity to participate in this proceeding but declined to do so.

## Opinion

### I. Defendants' Motion to Dismiss and to Abstain

#### A. Motion to Dismiss based on Statutes of Limitations

The first ground advanced by defendants in support of their motion to dismiss is that many of plaintiffs' claims under both 42 U.S.C. § 1983 and Wis.Stat. § 111.70 should be dismissed as time barred.

In cases brought pursuant to § 1983, federal courts are directed to apply the most analogous state statute of limitations. 42 U.S.C. § 1988; *Saldivar v. Cadena,* 622 F.Supp. 949, 954 (W.D.Wis.1985). In *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 1948, 85 L.Ed.2d 254 (1985), the United States Supreme Court held that the applicable state statute of limitations should be that pertaining to injuries to the rights of a person. Relying on *Garcia,* defendants contend that the applicable Wisconsin statute is Wis.Stat. § 893.54(1), which provides a three year statute of limitations for "injuries to the person." Therefore, defendants argue, plaintiffs are barred from litigating any claims that arose more than three years prior to the filing of their complaint.

This court held in *Saldivar* that Wis. Stat. § 893.53, which provides a six year statute of limitations for injuries "to character or rights," is the applicable statute of limitations in § 1983 suits. "The Wisconsin statute governing actions to recover damages for an injury to 'character or rights' is more closely analogous to the spirit of § 1983 than is the statute governing personal injury actions, and under *Gar-*

*cia,* it is the appropriate statute of limitations to apply in § 1983 actions." 622 F.Supp. at 955.

This lawsuit was filed with the court on December 31, 1985. The injuries alleged in the complaint began during the 1979–80 school year, and are alleged to have continued to the date of filing. All of the alleged injuries are within the six year period of limitations, with the possible exception of events prior to December 31, 1979. However, since it seems that the injuries alleged for each particular school year (that is, the alleged fair share overcharge and misuse of fair share funds) would have taken place over the course of the entire school year, I am not prepared to hold that plaintiffs' claims based on the 1979–80 school year are untimely.

■ Even if defendants were correct in their argument that under *Garcia* the applicable statute of limitations in Wisconsin for § 1983 actions is three years rather than six, the Court of Appeals for the Seventh Circuit has held that *Garcia* is not to be applied retroactively to § 1983 claims that accrued before *Garcia* was decided by the Supreme Court. *Anton v. Lehpamer,* 787 F.2d 1141 (7th Cir.1986); *Loy v. Clamme,* 804 F.2d 405 (7th Cir.1986). Prior to the decision in *Garcia,* the statute of limitations applicable to § 1983 claims in Wisconsin was the six year time period found in Wis.Stat. § 893.93(1)(a) for statutory causes of action for which no other limitation is prescribed by law. *Saldivar,* 622 F.Supp. at 956; *Reese v. Milwaukee County Sheriff Department,* 505 F.Supp. 88, 89 (E.D.Wis.1980). Consequently, since plaintiffs' claims arose before *Garcia,* the statute of limitations would still be six years, and their claims would not be time barred. Defendants' motion to dismiss some of plaintiffs' § 1983 claims as time barred will be denied.

Defendants argue also that plaintiffs' claims based on Wis.Stat. § 111.70 are time barred. Defendants point to Wis.Stat. § 111.70(4)(a), which provides that Wis. Stat. § 111.07 "shall govern procedure in all cases involving prohibited practices un-

der this subchapter ...". Next, defendants refer to § 111.07(14), which provides that "[t]he right of any person to proceed under this section shall not extend beyond one year from the date of the specific act or unfair labor practice alleged." Defendants conclude that there is a one year statute of limitations applicable to all actions under Wis.Stat. § 111.70, and that plaintiffs' claims based upon that statute are accordingly time barred.

■ Defendants' argument is not persuasive. Wis.Stat. § 111.07 governs the procedures to be followed in proceedings before the Wisconsin Employment Relations Commission. § 111.07(1) provides specifically that "[a]ny controversy concerning unfair labor practices may be submitted to the commission in the manner and with the effect provided in this subchapter, *but nothing herein shall prevent the pursuit of legal or equitable relief in courts of competent jurisdiction.*" (emphasis added.) Thus, by its terms § 111.07 would not appear to be applicable to a lawsuit brought in a court of competent jurisdiction. The Wisconsin Court of Appeals, citing the language just emphasized, has held that the one year statute of limitations period provided by § 111.07(14) is not applicable to a court action brought under § 111.70. *White v. Ruditys,* 117 Wis.2d 130, 136, 343 N.W.2d 421 (Ct.App.1983). I conclude that the one year limitation period of Wis.Stat. § 111.07(14) is not applicable to court cases brought under Wis.Stat. § 111.70.

There is no specific provision in Wis.Stat. § 111.70 of a limitation period for actions brought under the statute. In determining what the applicable statute of limitations for actions under § 111.70 should be, *Tully*

v. *Fred Olson Motor Service Co.,* 27 Wis.2d 476, 134 N.W.2d 393 (1965) is helpful authority. In *Tully,* the Supreme Court for the State of Wisconsin addressed the question of the applicable statute of limitations under a federal labor statute over which federal and state courts have concurrent jurisdiction (§ 301 of the Labor Management Relations Act of 1947, codified as 29 U.S.C. § 185). It was argued that the applicable period of limitations was either the six month limitation period applicable to administrative complaints filed with the NLRB, or the one year period of limitations of § 111.07(14). The supreme court rejected both these arguments, holding that the application of the six month period would require "major surgery, beyond the powers of this court," and that § 111.07(14) applies only to the right to proceed under that section. 27 Wis.2d at 487, 489, 134 N.W.2d 393. The court held that the applicable statute of limitations was the predecessor to present Wis.Stat. § 893.93(1)(a), which provides for a six year statute of limitations in "[a]n action upon a liability created by a statute when a different limitation is not prescribed by law." [2]

The reasoning in *Tully* is applicable here. Since § 111.70 does not provide for a statute of limitations, the six year period provided by § 893.93(1)(a) is applicable. As I explained above, I believe that all the injuries alleged in the complaint are timely under a six year period of limitations. Accordingly, the motion to dismiss some of the claims on grounds of the statutes of limitations will be denied.

### B. Motion for Abstention

Plaintiffs have raised several claims based on the federal constitution.[3] Count I

---

2. The specific result in *Tully* has been superseded by the United States Supreme Court's decision in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), which held that the applicable statute of limitations in cases under 29 U.S.C. § 185 is the six month period prescribed for NLRB proceedings. *Landahl v. PPG Industries,* 746 F.2d 1312, 1313 (7th Cir.1984).

3. The first three counts of the complaint allege violations of various federal constitutional

rights of plaintiffs. Plaintiffs have alleged 42 U.S.C. § 1983 as the basis of jurisdiction only for the first count and apparently seek to base jurisdiction for counts II and III directly on the Fourteenth Amendment due process and equal protection clauses. I will treat counts II and III as alleging jurisdiction under § 1983, since it is not clear that jurisdiction for a suit against a state official alleging violation of constitutional rights can be based directly on the Constitution.

of the complaint alleges that plaintiffs' First Amendment rights of freedom of expression and association, and their Fourteenth Amendment rights of due process and equal protection, have been violated by defendants' acts in entering into and enforcing section 3.4 (the fair share provision) of the collective bargaining agreement between the defendants. Specifically, plaintiffs allege that section 3.4 forces them to support and to forfeit money to be used for ideological activities of the defendants with which they are not in agreement; that their right of due process is denied because section 3.4 authorizes the Sauk Prairie School Board to deduct money from their salaries without prior notice or a prior showing of the purpose for which the money will be used; and that their right to equal protection is violated because section 3.4 divides bargaining unit employees into two classifications based on their status as union members or nonunion members and burdens the nonunion members by requiring the school board to withhold money from their salaries without their consent.

In Count II of the complaint, plaintiffs allege that Wis.Stat. § 111.70(1)(f), (2) and (3)(a)6 violates their Fourteenth Amendment right to due process by its vagueness and overbreadth, in that it permits school boards to require employees who are not union members to forfeit money to labor unions without providing specific guidelines to ensure that the First Amendment rights and property rights of the nonunion members are adequately protected. In Count III plaintiffs allege that Wis.Stat. § 111.70(1)(f), (2) and (3)(a)6 violates their Fourteenth Amendment right to equal protection by impermissibly discriminating against employees of school boards who are not members of labor unions based solely on their exercise of their First Amendment right not to join labor unions.

Counts IV through VI of the complaint are based on the Wisconsin constitution. Plaintiffs allege that their rights to due process and equal protection under the Wisconsin constitution have been violated, and that Wis.Stat. § 111.70(1)(f), (2) and (3)(a)6 permits an improper delegation of legislative authority. In Count VII, plaintiffs allege a violation of Wis.Stat. § 111.70(1)(f), (2) and (3)(a)6.

In their motion for abstention, defendants seek to have this court abstain from ruling on plaintiffs' federal constitutional claims until the Wisconsin Employment Relations Commission has resolved the complaint that some of the plaintiffs now have pending before the commission, and that this court decline to exercise pendent jurisdiction over plaintiffs' state constitutional and statutory claims.

In a limited number of exceptional circumstances, the judicially created doctrine of abstention may lead a federal court to decline to exercise its jurisdiction so that a state court or agency may decide an issue. *Evans v. City of Chicago,* 689 F.2d 1286, 1293 (7th Cir.1982). At least three types of abstention have been recognized by the courts. See *City Investing Co. v. Simcox,* 633 F.2d 56, 59 (7th Cir.1980); *Board of Education of Valley View v. Bosworth,* 713 F.2d 1316, 1320–21 (7th Cir.1983). These theories of abstention are commonly referred to by the name of the United States Supreme Court cases that first discussed them. Thus, there is *Pullman* abstention, from *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Burford* abstention, from *Burford v. Sun Oil,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); and *Younger* abstention, from *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

I note initially that *Younger* abstention has no applicability in this case. It is applicable only where there is a risk that the federal judiciary may be injected into a state initiated adjudication pending in a state forum, or where the relief "would operate directly against a state court." *Evans v. City of Chicago,* 689 F.2d at 1294. Neither of these circumstances is present here.

In *Pullman,* "the Court held it proper to exercise equitable discretion to abstain when the resolution of a difficult threshold question of state law could obviate the need to decide a constitutional question." *Board of Education of Valley View v.*

*Bosworth,* 713 F.2d at 1320. Thus, *Pullman* abstention is the doctrine that a federal court should abstain in order to avoid unnecessary constitutional adjudication, "to promote a harmonious federal system by avoiding a collision between the federal courts and state (including local) legislatures." *Waldron v. McAtee,* 723 F.2d 1348, 1351 (7th Cir.1983). This type of abstention has been held to be particularly appropriate where a state statute is susceptible of a construction that would avoid or significantly alter a constitutional issue. *Ibid.,* 723 F.2d at 1352.

*Burford* abstention also originates in federalism concerns, but it is appropriate in slightly different circumstances. *Burford* abstention "is appropriate only if federal review of a difficult question of state law would disrupt state efforts to establish a coherent policy respecting a matter whose importance transcends the result in the case under consideration." *Evans v. City of Chicago,* 689 F.2d at 1295. In holding that a case before it was not appropriate for *Burford* abstention, the court of appeals has noted that

> Here state policy is expressed relatively simply in a series of accessible statutes, not entrusted to the discretion of a specialized agency as in *Burford;* here state policy is not under attack; here the adjudication of issues raised by the policy is not entrusted to a specialized tribunal.

*Board of Education of Valley View v. Bosworth,* 713 F.2d at 1320. See also *Evans v. City of Chicago,* 689 F.2d at 1295.

### 1. *Pullman* abstention

*Pullman* abstention appears to be appropriate in this case. A decision on the constitutionality of Wis.Stat. § 111.70 would be necessary if this court were to rule on plaintiffs' claims. Counts II and III of the complaint challenge the facial and as applied constitutionality of Wis.Stat. § 111.-70(1)(f), (2), and (3)(a)6. Count I of the complaint challenges section 3.4 of the collective bargaining agreement between the defendants; however, since Count I alleges that this section was entered into under color of Wis.Stat. § 111.70(1)(f), (2), and

(3)(a)6, it also puts the constitutionality of this statute at issue.

For *Pullman* abstention to be appropriate, it must appear not only that the constitutionality of a state enactment is at issue, but that the state proceeding in favor of which the federal court abstains will eliminate or significantly alter that issue. Plaintiffs argue that the Wisconsin supreme court does not defer to the Wisconsin Employment Relations Commission on matters of law and statutory interpretation, citing *Browne v. Milwaukee Board of School Directors,* 83 Wis.2d 316, 265 N.W.2d 559 (1978), a proposition I do not question. If it appeared that the commission's determination whether the Sauk Prairie fair share agreement was consistent with § 111.70 would not be given any weight by Wisconsin courts, it might be doubtful whether the commission's determination could eliminate or alter the constitutional issues in this case. However, the Wisconsin supreme court has held that it is appropriate to defer to an agency on issues of fact and application of fact to law. *Beal v. First Fed. Sav. & Loan Assoc. of Madison,* 90 Wis.2d 171, 198, 279 N.W.2d 693 (1979). *Browne* establishes that Wisconsin courts will defer to the Wisconsin Employment Relations Commission on factual issues concerning fair share agreements and the application of § 111.70 to such agreements.

The issue in *Browne* was whether it was appropriate for a circuit court to transfer a case to the commission to make findings of fact and conclusions of law as to how much of the plaintiffs' fair share contributions had been used for purposes unrelated to collective bargaining or contract administration. 83 Wis.2d at 327–328, 265 N.W.2d 559. The state supreme court held that such a transfer would have been erroneous if the issues left for the commission to determine had been mainly legal or constitutional, rather than factual. 83 Wis.2d at 329–330, 265 N.W.2d 559. However, because the circuit court had already determined that the challenged provisions of § 111.70 were constitutional, the transfer was appropriate. The supreme court also

stated that § 111.70 should be interpreted according to the usual rule of statutory interpretation, by which statutes are to be construed so as to be constitutional. 83 Wis.2d at 331–332. Thus, under *Browne,* the commission is the appropriate body to determine whether a fair share provision complies with § 111.70. Such a determination is an application of law to fact, and as such entitled to deference by the Wisconsin courts.

In this case, as in *Browne,* the commission must determine whether the use made of the plaintiffs' fair share contributions is consistent with § 111.70. In order to fulfill the requirement that § 111.70 be construed *so as to be constitutional, the commission* will necessarily have to consider the First Amendment requirements for fair share provisions enunciated by the United States Supreme Court in *Chicago Teachers Union v. Hudson,* —— U.S. ——, 106 S.Ct. 1066, 89 L.Ed.2d 232. Although the commission's interpretation of the First Amendment would not be given automatic deference by a Wisconsin court, the commission's determination whether the Sauk Prairie fair share agreement complied with § 111.70 would be a question of the application of law to fact that would be entitled to deference under *Browne.*

The most obvious way for the commission to interpret § 111.70 so that it is constitutional would be to interpret it as incorporating the requirements of *Hudson.* If § 111.70 is held to incorporate these requirements, it is conceivable that the commission could find that the provisions for fair share deductions in the defendants' collective bargaining agreement violate § 111.70. That such an outcome is likely is strongly suggested by the fact that the commission's June 20th order required the respondents to show cause why the commission should not issue a cease and desist order preventing the enforcement of their fair share agreement. A finding by the commission that the fair share agreement under attack here violates the provisions of

§ 111.70 could obviate the need for this court to consider plaintiffs' constitutional challenges to § 111.70, since it could eliminate the constitutional bases for objection to § 111.70. Thus, the commission's resolution of the pending challenge to the Sauk Prairie fair share agreement could eliminate or significantly alter the constitutional issues that this court would have to address.

■ Plaintiffs argue that the proceeding before the Wisconsin Employment Relations Commission is too dissimilar to their complaint in this court to be a basis for abstention. I do not find this argument convincing. Plaintiffs contend that one source of dissimilarity between the two cases is that some of the plaintiffs in this case are not complainants before the Wisconsin Employment Relations Commission.[4] However, the Court of Appeals for the Seventh Circuit has held that the fact that some of the plaintiffs in a federal case are not parties in a state court proceeding will not bar abstention, at least "where the interests of the plaintiffs in each of the suits are congruent." *Lumen Construction, Inc. v. Brant Construction Co., Inc.,* 780 F.2d 691, 695 (7th Cir.1985). Since the plaintiffs in this case and the Sauk Prairie complainants before the Wisconsin Employment Relations Commission are all teachers employed by the Sauk Prairie School Board who are challenging the defendants' fair share provisions, their interests are congruent.

Plaintiffs urge as another point of dissimilarity that they did not allege any constitutional violations in their Wisconsin Employment Relations Commission complaint. Although it is true that the commission complaint did not specify constitutional rights that had allegedly been violated, it is questionable whether the commission could have avoided addressing constitutional issues in ruling on the complaint, particularly in view of the statement in the complaint

---

**4.** Plaintiffs' brief is not entirely clear whether five or six of the plaintiffs in this case are not complainants before the Commission. Three of these plaintiffs (Frericks, Lyon, and Larson) have apparently been added to the Commission proceeding. Thus, it appears that three of the plaintiffs (Kochaver, Morey and Lang) are not complainants before the Commission.

that "The protection of everyone [sic] group (fair share) and individual rights are at stake." In any case, it is clear from the commission's memorandum accompanying its June 20, 1986 order to show cause that the commission intends to address the constitutional issues raised by *Hudson* in deciding the fair share cases before it. These constitutional issues are the same ones that this court would have to decide if it were to rule on plaintiffs' complaint.

In the memorandum accompanying the copy of the transcript of the Wisconsin Employment Relations Commission hearing held on September 17, 1986 that plaintiffs filed with this court on January 20, 1987, plaintiffs argue that this transcript indicates that the commission does not intend to handle some of the issues that plaintiffs have raised in this case, including the issue of "allocation", which I assume means the issue of how the defendant unions have used the money withheld from plaintiffs' salaries as fair share deductions. I do not read the transcript as indicating that the commission does not intend to reach this issue. Instead, Commissioner Torosian's comments at pages 61–62 of the transcript seem to indicate that although the commission did not intend to address the allocation issue at the September 17th hearing, it would consider holding another hearing on that issue if it still remained to be decided after the commission decided what kinds of union expenses were properly chargeable to fair share members. Thus, the transcript does not support plaintiffs' claims concerning the differences between the commission proceeding and the complaint in this case.

■ The other arguments against abstention advanced by plaintiffs that are applicable to the issue of *Pullman* abstention may be disposed of quickly. Plaintiffs argue that exhaustion of state remedies is not required before they may bring a federal civil rights action. This argument is irrelevant. The doctrines of exhaustion and abstention are distinct. Exhaustion is the requirement that a litigant avail himself of all available state remedies before filing in federal court; it is a prerequisite to federal subject matter jurisdiction in cer-

tain kinds of cases. In contrast, abstention involves the question whether a federal court that has subject matter jurisdiction should decline to exercise it. The lack of an exhaustion requirement in civil rights cases is not relevant to the question whether this court should exercise its jurisdiction or abstain from doing so. The fact that civil rights are involved does not mean that abstention is necessarily inappropriate. *Lumen Construction, Inc. v. Brant Construction Co., Inc.,* 780 F.2d 691, 696 (7th Cir.1985).

Finally, plaintiffs argue that *Pullman* abstention is inappropriate because the Wisconsin courts have not ruled on the constitutional issues raised in *Hudson*. I find this argument difficult to understand, since the basis for *Pullman* abstention is the idea that state courts ought to have a chance to construe state statutes in a manner consistent with the constitution before a federal court finds them to be unconstitutional. If Wisconsin courts have not yet had a chance to address the issues remaining after *Hudson,* in particular the issue the construction of § 111.70 in the wake of *Hudson,* this makes the argument for abstention that much stronger.

■ Since a decision on plaintiffs' claims would require this court to determine the constitutionality of various sections of Wis. Stat. § 111.70, and since it appears likely that abstention in favor of the proceeding before the Wisconsin Employment Relations Commission concerning the Sauk Prairie fair share agreement may eliminate the need to decide this issue or substantially alter it, I conclude that abstention is appropriate under the *Pullman* doctrine.

### 2. Burford abstention

*Burford* abstention "is appropriate only if federal review of a difficult question of state law would disrupt state efforts to establish a coherent policy respecting a matter whose importance transcends the result in the case under consideration." *Evans v. City of Chicago,* 689 F.2d at 1295; *Metropolitan Life v. Board of Directors,* 572 F.Supp. 460, 473 (W.D.Wis.1983). This

case reveals a number of factors indicating that *Burford* abstention is appropriate.

First, it is apparent that the Wisconsin Employment Relations Commission is in the process of developing Wisconsin policy on fair share agreements in light of the United States Supreme Court's decision in *Hudson.* The commission has numerous pending cases involving challenges to fair share agreements. In addition to *Browne v. Milwaukee Board of School Directors,* the Sauk Prairie case and the four other fair share cases with which it was consolidated are pending. The commission indicated in its June 20, 1986 order consolidating these cases that the fair share issues in all five cases are not only almost identical to each other, but are also almost identical to those everywhere else in the state:

> First, WEAC has the identical rebate procedure in Sauk Prairie as it does in the four other locals whose procedures are also in issue. Second, the NEA and WEAC assessments are uniform throughout the state, and here, will be rebatable in the same, or nearly the same, percentage in all affiliates in the state. Therefore, this case will be decided *de facto* in the other cases and "substantial collateral estoppel issues will emerge" if this case is litigated "out of sequence."

As the above quotation indicates, the commission's decision in the *Browne* case and the Sauk Prairie and other consolidated cases will be the initial determination of Wisconsin policy toward fair share agreements in the public school context. The fact that nearly identical fair share issues exist in other school districts throughout the state demonstrates that the importance of the overall issue of what form fair share agreements must take to be constitutional transcends the Sauk Prairie case. For this court to rule on the Sauk Prairie case would almost certainly disrupt the commission's attempt to develop a coherent state policy in this area.

Moreover, it is clear that the commission is the specialized Wisconsin agency that has discretion in the area of labor law. Chapter 111 of the Wisconsin Statutes gives the commission the authority to deal with the area of employment relations. The Wisconsin supreme court's 1978 decision in *Browne* indicates that the supreme court is willing to defer to the commission's factual determinations in the fair share area.

The Court of Appeals for the Seventh Circuit held in *Board of Education of Valley View v. Bosworth,* 713 F.2d at 1320, that an attack on a state policy is an additional factor making *Burford* abstention appropriate. The number of cases challenging fair share agreements under Wis. Stat. § 111.70 throughout the state is a sufficient indication that state policy in this area is under attack.

Plaintiffs make only one argument relevant to the issue of *Burford* abstention. They argue that the exercise of federal jurisdiction will not disrupt the state's administrative process, because there had been no activity before the commission regarding the Sauk Prairie case since the June 24, 1983 order indefinitely postponing the hearing. Although it is true that there was an apparent hiatus in the commission's consideration of this case between June 1983 and May or June 1986 (a delay that counsel for the defendants has suggested may be attributable to the fact that the commission was waiting for the Supreme Court's decision in *Hudson* ), since the filing of plaintiffs' brief the commission has indicated that it is now considering the case actively. An order to show cause was issued on June 20, 1986; a hearing was held on September 17, 1986; and it appears that the parties' submission of briefs to the commission was complete on December 22, 1986. Under *Illinois Bell Telephone Co. v. Ill. Commerce Comm'n,* 740 F.2d 566, 570 (7th Cir.1984) it is appropriate to take these developments into account.

Under Wis.Stat. § 111.07(4), the commission is required to make and file its findings of facts and order "within 60 days after hearing all testimony and arguments of the parties," and although there have been earlier delays in the commission's proceeding that are not explained by the

record in this case, there is every indication now that the commission intends to decide the pending cases promptly. It is this decision process that would be disrupted if this court were to exercise its jurisdiction to decide plaintiffs' claims.

■ Since it appears that the Wisconsin Employment Relations Commission's efforts to establish a coherent Wisconsin policy concerning fair share agreements in a public school context would be disrupted if this court were to exercise jurisdiction, I conclude that abstention is appropriate under the *Burford* doctrine.

■ Aside from the *Pullman* and *Burford* abstention doctrines, the Court of Appeals for the Seventh Circuit has indicated that a number of other factors are important in deciding whether to abstain. *Lumen Construction, Inc. v. Brant Construction Co., Inc.*, 780 F.2d at 694. My decision to abstain is reinforced by the presence of a number of these factors in this case. The desirability of avoiding piecemeal litigation is one factor to be considered, and since the Wisconsin Employment Relations Commission has already declined to hold plaintiffs' claims in abeyance until they are decided by this court, a danger of piecemeal litigation is evident. The order in which jurisdiction was obtained by the concurrent forums must also be considered, and in this case the Sauk Prairie Wisconsin Employment Relations Commission complaint was filed three and a half years before the complaint in this court. The commission has indicated that it intends to consider *Hudson* in ruling on the fair share cases before it, and there is nothing to suggest that the commission proceeding will not adequately protect the plaintiffs' federal rights. Finally, the relative progress of the state and federal proceedings must be considered. A decision in the commission proceeding seems to be imminent. Under the circumstances, abstention is entirely appropriate.

The Court of Appeals for the Seventh Circuit has held that where a court abstains from exercising jurisdiction, the proper procedure is to stay the proceeding rather than to dismiss the complaint. *Lu-*

*men Construction, Inc.* 780 F.2d at 698; *Mazanec v. North Judson-San Pierre School Corp.*, 750 F.2d 625, 627 (7th Cir. 1984). Therefore, I will stay this case until the Wisconsin Employment Relations Commission proceedings on the Sauk Prairie case, which is numbered Case 22, No. 29357, MP-1312, and the other four cases with which the Sauk Prairie case has been consolidated, are concluded.

### 3. Pendent jurisdiction

■ Along with their motion for this court to abstain from ruling on plaintiffs' federal constitutional claims, defendants have moved that this court decline to exercise pendent jurisdiction over plaintiffs' state constitutional and statutory claims. The motion is well founded. It would be inconsistent to abstain from considering plaintiffs' federal constitutional claims at this time, but to proceed to consider plaintiffs' state claims. I have indicated above that one basis for the decision to abstain is my belief that the Wisconsin Employment Relations Commission may eliminate or significantly alter the constitutional issues in this case. This being so, it would be premature to attempt to determine at this stage whether there is a common nucleus of operative fact between plaintiffs' federal and state claims, as required under *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

However, I believe that it is appropriate to note at this stage that it is unlikely that I would ever exercise pendent jurisdiction over counts IV through VI of the complaint, which allege claims under the Wisconsin constitution. A state's supreme court "is, for exclusively State purposes, the ultimate tribunal in construing the meaning of her Constitution." *Dyer v. Sims*, 341 U.S. 22, 28, 71 S.Ct. 557, 560, 95 L.Ed. 713 (1951). Attempting to interpret state constitutional guarantees would inevitably be an intrusion on state sovereignty. Interpretation of a state's constitution is a task best left to the courts of that state.

### C. Motion to Dismiss for Failure to State a Claim

Along with their motion for the court to abstain, defendants have moved that part of the complaint be dismissed for failure to state a claim. Defendants argue that the counts of the complaint based on the Wisconsin constitution and on Wis.Stat. § 111.-70 fail to state a claim, and that all claims asserted against individual defendants fail to state a claim. Since I have decided to abstain in favor of the Wisconsin Employment Relations Commission proceeding, I will not address the motion to dismiss for failure to state a claim. If, after the commission proceeding has concluded, it becomes necessary to exercise jurisdiction over this case, defendants may renew those motions they think appropriate.

### II. Plaintiffs' Motion for a Preliminary Injunction

Plaintiffs have submitted a motion for a preliminary injunction requiring the defendants to cease and desist from enforcing the Sauk Prairie fair share agreement, requiring them to make the plaintiffs whole with interest for all fair share deductions taken from their salaries by defendants since December 31, 1982 and for all fair share refunds since the same date,[5] requiring the defendants to place the entire amount taken from each plaintiff since December 31, 1982 as his or her fair share fee in an interest bearing escrow account, and requiring that the amount escrowed for each plaintiff be verified by independent audit at defendants' expense.

To be entitled to preliminary relief, the moving party must demonstrate that there is no adequate remedy at law, a danger of irreparable harm, and some likelihood of success on the merits. *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir.1986). Plaintiffs' brief in support of their motion for a preliminary injunction refers to this standard, but makes no attempt to apply it. Instead, plaintiffs' main argument in support of preliminary relief is

that under the Supreme Court's decision in *Hudson*, the defendants are required to place all of plaintiffs' fair share fees in escrow, and that since the defendants have not offered to do this voluntarily, plaintiffs are entitled to injunctive relief.

It is well established that injunctive relief is not available for purely monetary injuries, the theory being that monetary injuries are fully compensable by an award of damages after trial. *Tele-Controls, Inc. v. Ford Indus.*, 388 F.2d 48, 50 (7th Cir. 1967). Thus, to the extent that plaintiffs' argument turns on whether their fair share funds are escrowed now or returned to them later with interest, it does not establish that plaintiffs are entitled to injunctive relief.

The fact that plaintiffs are alleging violations of their constitutional rights may mean that the rule against injunctive relief for monetary damages is inapplicable in this case. However, there is another, more compelling respect in which plaintiffs have failed to demonstrate that they will be irreparably harmed if an injunction is not issued. Plaintiffs' request for preliminary relief is very similar to the order to show cause issued by the commission in the Sauk Prairie case on June 20, 1986. In fact, the motion for a preliminary injunction seems to be modelled in part on the commission's order. The commission ordered the respondents to show cause why an order should not issue

a. requiring Respondents to immediately cease and desist from enforcing/honoring any fair share agreement affecting the bargaining unit involved in this matter;

b. requiring Respondents to refrain from enforcing/honoring a fair share agreement affecting the bargaining unit involved in this matter until the Commission has determined, after a hearing, that the *Hudson* conditions precedent to fair share collections have been met;

c. requiring Respondent Unions to immediately make the Complainants whole

---

5. It is not clear from the motion why the defendants should make the plaintiffs whole for

money that has already been refunded to them.

with interest for all fair share deductions taken from them since one year prior to the filing of the complaint.

Thus, the commission has already indicated its willingness to give plaintiffs the relief that they are requesting this court give them by means of a preliminary injunction. In fact, the commission's relief would be broader than that requested by plaintiffs in their preliminary injunction in one respect: the order to show cause indicates that the commission would order the respondents to make the complainants whole with interest for all share deductions "since one year prior to the filing of the complaint," or in other words since February 24, 1981. Plaintiffs' motion for preliminary relief asks only for their deductions since December 31, 1982.

Plaintiffs have acknowledged that the commission ordered the respondents to place all fair share deductions for the complainants since March 4, 1986 in escrow at the September 17, 1986 hearing. Plaintiffs appear to be contending that they will be irreparably harmed by the inadequacy of this award. However, my understanding is that the September 17th order was in the nature of interlocutory relief, and that when the commission issues its final decision, it will determine whether the respondents have shown cause why the relief indicated in the June 20, 1986 order quoted above should not be ordered. For this reason, the fact that the commission did not give the plaintiffs all the relief they requested after the September 17th hearing does not demonstrate irreparable harm. Plaintiffs' argument that the commission

did not order interest on the escrow amounts is not compelling for this reason. Since the order to show cause clearly states "to make the Complainants whole *with interest*" (emphasis added), interest on their fair share deductions is clearly a form of relief that the commission is considering awarding to plaintiffs after its final decision.

As I indicated above in discussing why I find abstention to be appropriate, the commission's decision appears to be imminent. Under the circumstances, it does not appear that plaintiffs will be irreparably injured if the motion for a preliminary injunction is denied. To grant preliminary relief would run the very risk of unnecessarily finding a state statute unconstitutional and of disrupting state efforts to formulate a coherent policy in an important area that the abstention doctrine is meant to prevent. Plaintiffs' motion for a preliminary injunction will be denied.

IT IS ORDERED that plaintiffs' motion for a preliminary injunction is DENIED. Defendants' motion to dismiss part of the complaint on grounds that it is time barred is DENIED. Defendants' motion for the court to abstain is GRANTED; proceedings in this case are STAYED until after the Wisconsin Employment Relations Commission has concluded its proceedings on Case 22, No. 29357, MP–1312, and the cases with which that case was consolidated for decision.